THE HUDSON BUILDING AND LOAN ASSOCIATION, a corporation of the State of New Jersey, complainant-appellant,

*v.*

LOUIS H. BLACK and MATHILDA BLACK, his wife, defendants-appellees.

[Argued May 24th, 1946.   Decided October 4th, 1946.]

*Mr. LeRoy Vander Burgh,* for the complainant-appellant.

*Mr. Joseph H. Gaudielle (Mr. James A. Major,* of counsel), for the defendants-appellees.

The opinion of the court was delivered by

FREUND, J.

The complainant appeals from a decree denying the foreclosure of complainant's mortgage and decreeing the satisfaction of said mortgage.

The appellant alleges in its complaint that on October 5th, 1923, Louis H. Black and his wife borrowed from the complainant the sum of $5,400 evidenced by a bond and secured by a mortgage encumbering the premises therein and in said complaint described. The defendants agreed to repay the borrowed moneys

"* * * by the payment of the sum of twenty-five cents per week on each of 27 shares, 52nd series, of the capital stock of said corporation, owned by said parties of the first part, and standing in their names, on the books of said corporation, and assigned to it as collateral security for the payment hereof, and on which this loan is based, during the period of this loan, together with all fines which may become due as provided by the Constitution and By-Laws of said corporation, which have been duly assented to by the said obligor and made a part hereof, and together with interest on said sum, to be computed from the date hereof at the rate of six per cent. per annum, * * *.

"Provided, However, that when the funds of said corporation in said pledged series shall equal two hundred dollars per share above all liabilities of said corporation, no further payments shall be required hereon except arrearages, if any, and thereupon a satisfaction piece for the cancellation hereof and of the mortgage given to secure this bond, shall be executed and delivered to said obligors, their heirs, executors, administrators or assigns, and said 27 shares shall thereupon also be cancelled."

The complainant further alleges that in September, 1937, default was made in the payment of said dues and interest,

whereupon complainant elected to foreclose its mortgage and that there was then due "the whole principal sum of $5,400, and interest thereon from September 30th, 1937." The complainant prays that "an account may be taken of the amount due on complainant's mortgage" and .that "a decree may be made for the sale of the mortgaged premises and the shares pledged as collateral security as aforesaid, to raise and pay to the complainant the amount so found due on its mortgage, with interest and costs."

The defendants by their answer admit the making of complainant's bond and mortgage but allege that on October 5th, 1923, "defendants were only indebted to the said complainant on that day in the sum of $4,964" although the complainant agreed to loan defendants the sum of $5,400, the difference of $436 being retained by the complainant as a premium. Defendants by their counter-claim allege that in 1932 there remained due to complainant on its bond and mortgage the sum of $3,587, but defendants, having available funds, instead of paying the balance due on complainant's mortgage, invested the sum of $5,200 in the appellant Association and received a certificate for 26 paid-up shares having a value of $200 each and bearing interest at five per cent. per annum payable quarter-annually. Subsequently, the appellant called in all outstanding paid-up shares and issued in place thereof new certificates paying a reduced rate of interest. Defendants complied with the appellant's request and received eight new certificates in place of the paid-up certificate issued in 1932. In 1938 the defendants applied to appellant for the withdrawal of the proceeds of one of said certificates of paid-up shares and received payments on account thereof. Defendants have not demanded of the appellant payment of the withdrawal value of the other paid-up certificates. Defendants allege that there is due from appellant upon the paid-up shares a balance of $4,850.75 and accrued interest of $1,323. Defendants admit that in 1923, when they executed the bond and mortgage in question, they subscribed for 27 shares of stock from said Association, having a maturity value of $200 each, which were pledged to said Association as collateral security for the eventual payment of the amount due, and to

be paid in accordance with the terms and conditions stated in said bond and mortgage. Defendants further allege that they have paid on account of the pledged shares the sum of $4,995 and the sum of $2,571.71 for interest. Defendants further admit that in "1940 the Commissioner of Banking and Insurance of the State of New Jersey, having determined that" the complainant "was insolvent" took possession of the appellant Association and "proceeded to liquidate the same for the benefit of the shareholders and creditors." The defendants also urge "that they be permitted to set off against the amount which they owe upon the bond" of these defendants secured by said mortgage, "the amount due to them from said Association upon the paid-up shares of said Association" shown by the certificates owned by defendants, and the mortgage receipted and surrendered for cancellation.

The defendants brief and argue three points; (1) that "the proofs amply demonstrate that the mortgage was paid;" (2) that "the defendants occupy the status of creditors;" and (3) that "the complainant seeking equity must do equity."

The mortgage under foreclosure, together with the bond secured by said mortgage, is the usual form of sinking fund loan authorized to be made by building and loan associations, with interest calculated on the unpaid balance of principal at the end of every three months from and after the date of the bond. There is annexed to and made a part of the defendant's bond an assignment of the pledged shares, wherein the defendants agreed that the pledged shares were assigned to the appellant "as collateral security for the payment of the debt mentioned in the" complainant's bond.

The premium charge when paid was not usurious, as alleged by the defendants. Premium charges were permitted by statute when the mortgage loan in question was made, *P. L. 1918 ch. 127 p. 291.* However, the complainant admits that "the defendants are entitled to be credited with the amount which they paid in premiums at the time of executing the mortgage, inasmuch as the liquidation prevented the Association from carrying out the terms of its contract." *Weir* v. *Granite State Provident Association, 56 N. J. Eq. 234; Harris* v. *Nevins, 68 N. J. Eq. 183; affirmed, 68 N. J. Eq.*

*684; Reliant Building and Loan Association* v. *Sauter, 128 N. J. Eq. 599.*

The learned Vice-Chancellor fell into error when he found that "the amount of dues paid were to be deducted from the amount of principal and interest" and that "all dues paid on the shares were expressly deducted from the principal of the debt." We have carefully examined the bond and mortgage and do not find therein any such provisions nor do the proofs justify such conclusions.

The defendants contend that, although the original principal sum was $5,400, they actually received the sum of $4,964, and having paid on account of the pledged shares the sum of $4,995, that when the latter "amount was repaid it matured the series." The testimony and exhibits disclose that the periodical payments agreed to be made by the defendants were payments on account of the pledged shares assigned by the defendants to complainant and were not payments on account of the mortgage debt. The bond and mortgage so provide and no credit on the mortgage debt can be allowed for payments made for dues on account of the pledged shares assigned to appellant as collateral security or for the value of such shares, unless and until the pledged shares have matured in accordance with the agreement between the parties. The mortgage loan was "payable in shares of the Association * * *." *R. S. 17:12–41.* By the terms and conditions of the bond and mortgage as to the method for the repayment of the moneys borrowed, the defendants expressly agreed that "when the funds of said corporation in said pledged shares shall equal two hundred dollars per share above all liabilities of said corporation, * * * said 27 shares shall thereupon also be cancelled." *Weir* v. *Granite State Provident Association, supra; Thirteenth Ward Building and Loan Association* v. *Weissberg, 115 N. J. Eq. 487; Reliant Building and Loan Association* v. *Sauter, supra.*

The learned Vice-Chancellor further found that "the testimony is that the payments on account of the stock subscription and interest were enough to pay the amount of the actual loan." The testimony of the bookkeeper in charge of the appellant Association for the Commissioner of Banking and

Insurance reveals that, from an examination of the appellant Association, the assets of said Association in 1938 and for subsequent years had been impaired to the extent of 75 per cent. and that there were "contingent losses" and "evident losses." The witness further testified that "the fact that the series were not matured although there was sufficient paid in with the book earnings, is evidence that the value is not there to declare their maturity." The defendants offered no testimony to deny the complainant's testimony as to the financial condition of the complainant Association. Mr. Justice Heher, speaking for the Court of Errors and Appeals in *Thirteenth Ward Building and Loan Association* v. *Weissberg, 115 N. J. Eq. 487* (at *p. 492*), said: "The liability imposed upon members of such Association to contribute to losses necessarily extends to the member who has become a borrower."

There was no proof that the board of directors had adopted any resolution or taken any affirmative action to mature the pledged shares or any of the shares in the series of which the pledged shares were a part; on the contrary, the record reveals no proof that the pledged shares ever equaled "two hundred dollars per share above all liabilities." It may not be necessary for a board of directors to take affirmative action to mature shares, if. in fact they have matured, but the burden of proving the maturity of shares is upon the party alleging it. We can only assume that the board of directors of said Association, knowing that the assets of said Association were substantially impaired, undoubtedly as the result of the economic depression preceding the Association's going into liquidation, were unable to take any affirmative action to declare the maturity of the pledged shares in that the amount paid on said pledged shares and any profits had not matured the pledged shares at $200 each above all liabilities. *R. S. 17:12–50.* The fact that possession of the Association was taken on May 1st, 1940, by the Commissioner of Banking and Insurance substantiates the inaction of the board of directors. *Vide, R. S. 17:12–48,* which establishes the share liability between the appellant Association and its shareholders.

The defendants do not charge the board of directors of the appellant Association with being arbitrary or derelict in its duty to the defendants, nor is the action of the Commissioner challenged in writing down the value of the pledged shares.

The defendants argue that they "have proceeded on the theory of actual payment" of the mortgage debt but, if in error, the defendants then submit that they "were entitled to set off the value of the paid up stock in the sum of $5,200." To sustain the defendants' contention, the defendants urge that the authority of *R. S. 17:12–72* "directs him [Commissioner] to allow all just set offs." *R. S. 17:12–72* is permissive and not mandatory. The present action of the Commissioner in foreclosing for the moneys due, without consenting to the set-off, denies the defendants' argument. The defendants, to maintain their argument, submit authorities for the proposition, "that a depositor in a bank may set off against the Commissioner the amount of his deposit," but the facts and the principle have no application to the instant controversy. The authorities that apply to deny the defendants' alleged right of set-off are *Weir* v. *Granite State Provident Association, supra; Whitehead* v. *Commercial Building and Loan Association, 64 N. J. Eq. 24; Gaskill* v. *Polhemus, 70 N. J. Law 251; French* v. *Wolfson, 88 N. J. Law 669; Thirteenth Ward Building and Loan Association* v. *Weissberg, supra; Rocker* v. *Cardinal Building and Loan Association, 13 N. J. Mis. R. 397; affirmed, 119 N. J. Law 134; Moore* v. *Conover, 123 N. J. Eq. 61.*

The defendants testified that an officer of the Association "talked them into leaving their money with the Association in paid up shares." The defendants were not obliged to make said investment; it was their money and they could do with it as they saw fit. Eventually, it proved to be an unfortunate investment. In retrospect, it would have been much wiser to have paid the mortgage debt, but this was not done. The Association was authorized to issue paid-up shares, now called income shares, *R. S. 17:12–47,* and holders of income shares are members and shareholders of an Association until their membership is terminated in the manner

provided by *R. S. 17:12–37*.  *Rocker* v. *Cardinal Building and Loan Association, supra; Thirteenth Ward Building and Loan Association* v. *Weissberg, supra.*

The defendants, to sustain their argument that "the defendants occupy the status of creditors," state that "in other jurisdictions there is an abundance of authority for holding that holders of this stock are creditors of the Association" without citing any statute or reported opinion in this state, or in just what manner defendants are creditors.

In *Bettle, Commissioner,* v. *Republic Savings and Loan, 63 N. J. Eq. 578* (at *p. 585*), it was held that "the members are not withdrawing shareholders, and, in fact, are not creditors. A corporation of this kind is *sui generis*. The ordinary shareholders are not creditors, * * *." *Rocker* v. *Cardinal Building and Loan Association, supra; In re Sixth Ward Building and Loan Association, 134 N. J. Eq. 98;* Restrictions on Suits, see *P. L. 1946 ch. 56* § *74*. In *Fitzgerald* v. *State Mutual Building and Loan Association, 76 N. J. Eq. 137,* the holder of paid-up shares claimed the status of creditor and a preference in the distribution of the assets of the association in liquidation, which preference as a creditor was denied. *Moore* v. *Conover, supra*. A shareholder, either of installment or income shares, is a subscriber to the capital stock of a building and loan association, and is not a creditor. *Schwarz* v. *Orion Building and Loan Association, 129 N. J. Eq. 297.*

Since the controlling principle of a building and loan association is that of mutuality among its members, all shareholders must be treated equally, so that all of the profits or losses are shared in equal manner and one shareholder cannot profit to the prejudice of another. To permit a class of shareholders to offset their holdings against an indebtedness due an association would give a preference over other shareholders.

The defendants were in a dual relationship to the complainant Association; they were members of the Association by virtue of their pledged and paid-up shares, and they were mortgage borrowers in that they were the original mortgagors. *R. S. 17:12–37* provides that "The members or shareholders

of the Association shall be those to whom its shares are issued * * *" and "when the retirement, lapsed, matured or withdrawal value of shares is paid, the subscribers thereto or owners thereof shall cease to be members * * *." *P. L. 1946 ch. 56 § 10 (5)* provides that a " 'Member' shall mean a person who holds a membership account in an association as a savings member or as a borrowing member." A member or shareholder of a building and loan association is in many respects much like a partner in a common enterprise. *In re Sixth Ward Building and Loan Association, supra.*

The defendants finally argue that "the complainant in seeking equity must do equity." There is much virtue in this equitable maxim, which is a general guiding principle in the administration of equity rather than an exact rule governing specific and well defined cases. The maxim is used for the purpose of enforcing contractual rights, and we cannot, under the maxim, change the contract of the parties, but must enforce it according to the terms made by the parties. The defendants must not themselves have been guilty of any wrong or neglect of duty.

The decree of the court below is reversed, and the record will be remitted to the Court of Chancery for disposition in accordance with this opinion.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, PARKER, BODINE, DONGES, HEHER, PERSKIE, OLIPHANT, WACHENFELD, WELLS, RAFFERTY, DILL, FREUND, MCGEEHAN, MCLEAN, JJ. 14.